# EXHIBIT A

FILED
05-18-2021
John Barrett
Clerk of Circuit Court
2021CV002967
Honorable Timothy
Witkowiak-22
Branch 22

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE COUNTY |
|---|---|---|

TOMAS SUXSTORF,
641 Hawthorne Avenue
South Milwaukee, WI 53172,

          Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,
120 Corporate Blvd.
Norfolk, VA 23502,

          Defendant.

**SUMMONS**

Case No.:

Classification Code: 30301

**Jury Trial Demanded**

Amount claimed is greater than the amount under Wis. Stat. § 799.01(1)(d).

---

THE STATE OF WISCONSIN, To each person named above as a Defendant:

    You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

    Within twenty (20) days of receiving this Summons, you must respond with a written Answer, as that term is defined in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the Statutes. The Answer must be sent or delivered to the Court, whose address is: Clerk of Courts, 901 North 9th Street, Milwaukee, Wisconsin 53223, and to Plaintiffs' attorney, whose address is Ademi LLP, 3620 East Layton Avenue, Cudahy, Wisconsin 53110. You may have an attorney help or represent you.

    If you do not provide an answer within twenty (20) days, the Court may grant Judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A

Judgment may be enforced as provided by law.  A Judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated:   May 18, 2021                                        ADEMI LLP

                                                     By: *Electronically signed by Mark A. Eldridge*
                                                          Mark A. Eldridge (State Bar No. 1089944)
                                                          *Attorney for Plaintiff*

<u>Mailing address:</u>
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Phone No.: 414-482-8000

2

FILED
05-18-2021
John Barrett
Clerk of Circuit Court
2021CV002967
Honorable Timothy
Witkowiak-22
Branch 22

| | | |
|---|---|---|
| **STATE OF WISCONSIN** | **CIRCUIT COURT**<br>**CIVIL DIVISION** | **MILWAUKEE COUNTY** |

| | |
|---|---|
| TOMAS SUXSTORF,<br>641 Hawthorne Avenue<br>South Milwaukee, WI 53172,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br>120 Corporate Blvd.<br>Norfolk, VA 23502,<br><br>　　　　　　　　Defendant. | **COMPLAINT**<br><br>Case No.:_____<br>Classification Code: 30301<br><br><br><br>**Jury Trial Demanded**<br><br>Amount claimed is greater than the amount under Wis. Stat.<br>§ 799.01(1)(d). |

　　　　COME NOW Plaintiff Tomas Suxstorf, by his Attorneys, Ademi LLP, and for a cause of action, states as follows:

## INTRODUCTION

　　　　1.　　This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

　　　　2.　　The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to Wis. Stat. § 801.05(3). Defendant's collection activities were directed at Wisconsin residents in Wisconsin. Venue in Milwaukee County is proper because the claim arose in Milwaukee County, and Defendant attempted to collect debts in connection with a consumer transaction that occurred in Milwaukee County. Wis. Stat. §§ 801.50; 421.401(1)(a) ("The venue for a claim arising out of a consumer transaction or a consumer credit transaction is the county: … Where the customer resides ….").

## PARTIES

3. Plaintiff Tomas Suxstorf is an individual who resides in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that Defendant sought to collect from Plaintiff debts incurred as a result of a consumer transaction.

6. Defendant Portfolio Recovery Associates, LLC ("PRA") is a debt collection agency with its principal place of business located at 120 Corporate Blvd., Norfolk, Virginia 23502. It is a subsidiary of PRA Group, Inc. ("PRA Group"), a publicly traded company and one of the largest debt collectors in the United States.

7. PRA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

9. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's

raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16-17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

10. The primary purpose of PRA's business, and PRA's principal purpose, is the collection of consumer debts. *See, e.g.*, *Barbato*, 916 F.3d at 265; *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

11. PRA Group's 10k form, filed with the SEC on or around December 31, 2016, states:

> Our primary business is the purchase, collection and management of portfolios of nonperforming loans that have been charged-off by the credit grantor. The accounts we acquire are primarily the unpaid obligations of individuals owed to credit grantors, which include banks and other types of consumer, retail, and auto finance companies.

12. PRA is a debt collector as defined in 15 U.S.C. § 1692a.

13. PRA is also a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

3

14. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

15. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

16. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

17. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

18. PRA is a "debt collector" as defined in Wis. Stat § 427.103(3).

# FACTS

19. On or about June 16, 2020, Plaintiff received a debt collection letter from PRA regarding an alleged debt owed to PRA with an "Original Creditor" listed as "U.S. BANK

4

NATIONAL ASSOCIATION D/B/A ELAN FINANCIAL SERVICES." A copy of this letter is attached to this complaint as Exhibit A.

20. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family or household purposes.

21. Upon information and belief, Exhibit A is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer, used by Defendant to attempt to collect alleged debts.

22. Exhibit A includes the following representations:

> If you would like us to consider your account for permanent hardship, please complete the enclosed form or provide a written statement. Supporting documentation is also required.
>
> Your statement should list all sources of income, explain the nature of the hardship, and provide the expected hardship duration.
>
> Power of Attorney or Guardianship documentation should also be provided, if applicable.

23. Exhibit A further represents:

> If you qualify for a Permanent Hardship, we will not contact you for collections. If based on the information you provided, you qualify for our Temporary Hardship program, we will cease collection attempts for at least 90 days from the date of your first communication with PRA about the hardship. Should you require further assistance, please contact us.

24. Finally, Exhibit A indicates "The information should be provided within the next 30 days...."

25. Furthermore, enclosed along with Exhibit A was a document purporting to be a "Permanent Hardship Request Form." A copy of this document is attached to the complaint as Exhibit B.

5

26. Upon information and belief, <u>Exhibit B</u> is a standard form used by Defendant to attempt to collect alleged debts, and PRA is in the regular practice of enclosing such forms along with debt collection letters in the form of <u>Exhibit A</u>.

27. <u>Exhibit B</u> requests the consumer provide PRA, along with other things, the following information: (1) their date of birth, (2) last four digits of their social security number, (3) employment status, (4) whether the consumer is receiving unemployment benefits, (5) whether the consumer is receiving social security benefits, (5) whether the consumer is receiving any other governmental financial assistance, (6) any other sources of income, and (7) a description of any financial hardship experienced, including the expected duration of such hardship.

28. <u>Exhibit A</u> requests the consumer provide information under false pretenses.

29. Upon information and belief, although <u>Exhibit A</u> purports to solicit information from the consumer for the purpose of determining whether the consumer qualifies for financial hardship, the primary purpose for PRA is to assess whether to bring a lawsuit against the consumer providing such information.

30. Upon information and belief, PRA's purported "hardship" programs are a sham.

31. Upon information and belief, PRA would use any information provided in a consumer's completed hardship request form to further attempt to collect the debt, including whether to file a lawsuit.

32. In addition to telephone and mail-based debt collection activities, PRA is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for PRA returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

33. CCAP shows that PRA filed 219 small claims actions in Milwaukee County in June 2020 alone. CCAP also shows that PRA filed 165 small claims actions in Milwaukee County in April 2019 alone. Upon information and belief, PRA filed hundreds of cases in Milwaukee County and in other Wisconsin counties each month, and virtually all or actually all of those cases are collection actions against Wisconsin consumers.

34. Upon information and belief, PRA did not need any of the consumer's financial information to settle the account for far less than the amount owed or to cease collections.

35. Moreover, an unsophisticated consumer would understand the reference to the "hardship" program to mean that the consumer needs to provide detailed financial and personal information about the "nature" of the hardship—which may include information of an extremely private and intimate nature—in order to require Defendant to cease communication. *See* 15 U.S.C. §§ 1692c(c), 1692d, 1692f.

36. Upon information and belief, PRA purchased Plaintiff's account for as little as 4 cents per dollar, and at most 10 cents per dollar, of the face value of the account.

37. Plaintiff was confused and misled by Exhibit A.

38. The unsophisticated consumer would be confused and misled by Exhibit A.

39. Plaintiff had to spend time and money investigating Exhibit A and the possible consequences of responding to Exhibit A.

### *The FDCPA*

40. Congress has described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt

7

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. Congress has described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

42. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

43. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

8

45. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

46. Recognizing existing laws did not protect consumers in a manner consistent with the continuation of a realistic credit economy, the Wisconsin legislature enacted the Wisconsin Consumer Act to protect consumers against unfair, deceptive, and unconscionable business practices, and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2); Thomas D. Crandall, "The Wisconsin Consumer Act: Wisconsin Consumer Credit Laws Before and After," 1973 Wis. L. Rev. 334, 334-35 (1973).

47. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, and instructs that these protections must be "liberally construed and applied" in order "to induce compliance with the WCA and thereby promote its underlying objectives." Wis. Stat. §§ 421.102(1), 425.301; *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).

48. In addition to specifically regulating certain kinds of conduct, such as the amounts and types of additional fees that may be charged to consumers in consumer credit transactions, the WCA broadly provides that the rights and protections it affords are inalienable, prohibits unconscionable conduct, and imposes an obligation of good faith in the performance and enforcement of all consumer transactions. Wis. Stat. §§ 421.106(1), 421.108, 425.107. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

9

49. To further the objectives underlying the WCA, the Wisconsin legislature has empowered the Wisconsin Department of Financial Institutions and the Wisconsin Department of Justice to bring actions against any person who violates the WCA, and has further provided Wisconsin consumers with an array of protections and legal remedies, including a private cause of action to temporarily or permanently enjoin conduct that violates the WCA or the federal consumer credit protection act and recover classwide statutory, actual, and punitive damages on behalf of all consumers who suffer similar injuries. Where a consumer seeks injunctive or declaratory relief, the WCA provides that "it shall not be a defense to an action brought under this section that there exists an adequate remedy at law." *See* Wis. Stats. §§ 421.102(1), 425.301, 425.401, 426.109(1), 426.110(1); 426.110(4)(e), 426.301.

50. The private cause of action is essential to deterring violations and furthering the the WCA's underlying objectives:

> The provisions of the WCA for private enforcement through the use of civil legal remedies by the individual consumer are some of the most important sections of the Act. The function of private enforcement is both to secure the rights of the individual and simultaneously to assist public authorities in achieving compliance for the ultimate benefit of all consumers.

Thomas D. Crandall, "Wisconsin Consumer Credit Laws Before and After the Consumer Act," 1973 Wis. L. Rev. 334, 376-77.

51. Thus, private actions under the WCA benefit not only consumers whose rights have been violated and competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law, but also the public authorities and the public generally, who would otherwise be burdened with the costs of using public resources to achieve compliance.

52.     Wis. Stat. § 421.108 requires that every consumer transaction under the WCA "imposes an obligation of good faith in its performance or enforcement," including "honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing."

53.     Wis. Stat. § 426.110 provides, in relevant part:

(1)  … [A]ny customer affected by a violation of chs. 421 to 427 and 429 or of the rules promulgated pursuant thereto or by a violation of the federal consumer credit protection act, or by conduct of a kind described in sub. (2), may bring a civil action on behalf of himself or herself and all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429. [...]

(2) Actions may be maintained under this section against any person who in making, soliciting or enforcing consumer credit transactions engages in any of the following kinds of conduct:

…

(c) False, misleading, deceptive, or unconscionable conduct in enforcing debts or security interests arising from consumer credit transactions.

## COUNT I – FDCPA

54.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

55.     By soliciting personal financial information for the purported purpose of determining whether he qualifies for suspended collections based on a financial hardship where the primary purpose of such information would be used for the purposes of assessing whether or not to bring a lawsuit against Plaintiff, Exhibit A includes representations which are false, deceptive, and misleading and communicate with Plaintiff in a deceptive manner.

56.     Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT II – WCA

57.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58.     By soliciting personal financial information for the purported purpose of determining whether he qualifies for suspended collections based on a financial hardship where the primary purpose of such information would be used for the purposes of assessing whether or not to bring a lawsuit against Plaintiff, Exhibit A includes representations which are false, deceptive, and misleading and communicate with Plaintiff in a deceptive manner.

59.     Defendant violated § 426.110.

## CLASS ALLEGATIONS

60.     Plaintiff brings this action on behalf of a potential class, consisting of (a) all natural persons in the state of Wisconsin, (b) to whom PRA mailed a collection letter in the form of Exhibit A to the Complaint in this Action, (c) from May 18, 2020 through the present, (d) that was not returned by the postal service.

61.     The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the class.

62.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

63.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

64.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: May 18, 2021

**ADEMI LLP**

By: *Electronically signed by Mark A. Eldridge*
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com