TOMAS SUXSTORF,

    Plaintiff,

               Case No. 21-cv-1024-pp

 v.

PORTFOLIO RECOVERY ASSOCIATES LLC,

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO MILWAUKEE COUNTY CIRCUIT COURT AND GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES (DKT. NO. 4)

On September 1, 2021, the defendant removed this case from Milwaukee County Circuit Court to the Eastern District of Wisconsin. Dkt. No. 1. The plaintiff had sued, individually and on behalf of others, for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§1692(a)-(e), and the Wisconsin Consumer Act (WCA), Wis. Stat. §421.102(2). Dkt. No. 1-1.

On September 16, 2021, the plaintiff filed a motion to remand to state court, arguing that this court lacks subject matter jurisdiction. Dkt. No. 4. He argued that the complaint did not allege a "concrete injury" sufficient to assert Article III standing. Dkt. No. 5 at 3. The plaintiff also asked the court to award him fees incurred due to the defendant's improper removal. Dkt. No. 4 at 1. The court will grant the plaintiff's motion to remand but will deny his request for fees and costs.

1

# I.    Background

## A.    Factual Allegations

The plaintiff is a resident of Milwaukee County. Dkt. No. 1-1 at p. 5, ¶3. He says that the defendant is a debt collection agency with its principal place of business in Norfolk, Virginia. Id. at ¶6.

The plaintiff alleges that he received a debt collection letter from the defendant on June 16, 2020, "regarding an alleged debt owed to [the defendant] with an 'Original Creditor' listed as 'U.S. BANK NATIONAL ASSOCIATION D/B/A ELAN FINANCIAL SERVICES.'" Id. at pp. 7-8, ¶19. The defendant filed a copy of the letter. Dkt. No. 2 at 15-16. The plaintiff says he believes the debt referred to in the letter was incurred from his use of a personal credit card. Dkt. No. 1-1 at p. 8, ¶20. He also believes that the letter is a computer-generated form letter with information specific to him, and that the defendant used such letters to collect alleged debts. Id. at ¶21. The plaintiff then points to specific representations in the letter:

> If you would like us to consider your account for permanent hardship, please complete the enclosed form or provide a written statement. Supporting documentation is also required.
>
> Your statement should list all sources of income, explain the nature of the hardship, and provide the expected hardship duration.
>
> Power of Attorney or Guardianship documentation should also be provided, if applicable
>
> . . .
>
> If you qualify for a Permanent Hardship, we will not contact you for collections. If based on the information you provided, you qualify for our Temporary Hardship program, we will cease collection attempts for at least 90 days from the date of your first communication with

2

[the defendant] about the hardship. Should you require further assistance, please contact us.

. . .

The information should be provided within the next 30 days . . .

Id. at ¶¶22-24 (quoting dkt. no. 2 at 15).

The plaintiff asserts that a copy of the "Permanent Hardship Request Form" was sent along with the letter. Id. at ¶25. The defendant filed a copy of this form. Dkt. No. 2 at 18-19. The plaintiff believes that the form is "a standard form used by Defendant to attempt to collect alleged debts, and [the defendant] is in the regular practice of enclosing such forms along with debt collection letters . . .." Id. at p. 9, ¶26. The form asks the consumer to provide the defendant with, among other things: the consumer's date of birth, the last four digits of the consumer's Social Security number, the consumer's employment status, whether the consumer is receiving unemployment benefits, whether the consumer is receiving Social Security benefits or any other financial assistance from the government, any other sources of income and a description of any financial hardship and the duration of that hardship. Id. at ¶27; dkt. no. 2 at 18. The plaintiff asserts that the defendant did not need the financial information from consumers to settle their debts or cease collections, and that "an unsophisticated consumer would understand the reference to the 'hardship' program to mean that the consumer needs to provide detailed financial and personal information about the 'nature' of the hardship . . . in order to require Defendant to cease communication." Id. at p. 10, ¶¶34-35.

3

The plaintiff alleges that the letter "requests the consumer provide information under false pretenses." Id. at p. 9, ¶28. He believes that the defendant's primary purpose in sending the letter and form is to assess whether it should bring a lawsuit against the consumer, calling the hardship program a "sham." Id. at ¶¶29-30. The plaintiff believes that the defendant would use the information gathered in the letter and form to further attempt to collect the consumer's debt, including through a lawsuit. Id. at ¶31. He notes the many court cases the defendant has litigated in Wisconsin courts, including 219 small claims cases brought in Milwaukee County by the defendant in June 2020 and 165 in April 2019. Id. at pp. 9-10, ¶¶32-33. The plaintiff believes the defendant typically files hundreds of cases in Milwaukee County and other Wisconsin counties each month and that virtually all the cases are collection actions against Wisconsin consumers. Id. at p. 10, ¶33.

According to the plaintiff, the defendant purchased his account for "as little as 4 cents per dollar, and at most 10 cents per dollar, of the face value of the account." Id. at ¶36. The plaintiff says he was confused and misled by the letter and that an unsophisticated consumer also would be confused and misled by the letter. Id. at ¶¶37-38. He says that he was required to spend time and money investigating the letter and the consequences of his response. Id. at ¶39.

The defendant has answered the complaint. Dkt. No. 3. It has asserted as an affirmative defense that "Plaintiff has not incurred an injury in fact, and

4

Plaintiff does not therefore have standing under Article III of the United States Constitution to bring the instant claims." Id. at p. 32, ¶3.

B.    Claims

Count I of the complaint alleges that the defendant violated the FDCPA—15 U.S.C. §§1692e and 1692e(10), by

> soliciting personal financial information for the purported purpose of determining whether he qualifies for suspended collections based on a financial hardship where the primary purpose of such information would be used for the purposes of assessing whether or not to bring a lawsuit against Plaintiff, [the letter] includes representations which are false, deceptive, and misleading and communicate with Plaintiff in a deceptive manner.

Dkt. No. 1-1 at p. 14, ¶55.

Count II alleges that the defendant violated the WCA, Wis. Stat. §426.110, in the same way. Id. at p. 15, ¶58.

## II.   Motion to Remand (Dkt. No. 4)

A.    Parties' Arguments

The plaintiff argues that removal was improper because the court lacks jurisdiction given that he has not asserted an injury in fact sufficient to confer Article III standing. Dkt. No. 5 at 3-4. He asserts that the defendant has admitted as much in its answer. Id. at 5, n.3.

The plaintiff says that the Seventh Circuit Court of Appeals has held that district courts lack subject matter jurisdiction over FDCPA claims "unless the plaintiff expressly alleges that the violation caused them to act to their detriment." Id. at 4 (citing Gunn v. Thrasher Buschmann & Voelkel, P.C., 982 F.3d 1069 (7th Cir. 2020)). He argues that a plaintiff alleging that he or she is

5

"confused and aggravated" does not constitute a "concrete injury" sufficient to confer Article III standing. Id. at 4-5 (citing Markakos v. Medicredit, Inc., 997 F.3d 778, 781 (7th Cir. 2021)). He maintains that the costs incurred in connection with investigating the alleged misrepresentations also are insufficient to confer standing. Id. at 5 (citing Gunn, 982 F.3d at 1071-72).

The defendant responds that the plaintiff's claims for actual damages satisfy the concrete injury prong for Article III standing. Dkt. No. 7 at 4. The defendant compares the plaintiff's complaint to the one in Thornley v. Clearview AI, Inc., 984 F.3d 1241 (7th Cir. 2021). Id. at 4-5. It argues that the plaintiff in Thornley did not bring a federal claim and avoided pleading any injury. Id. at 5. The defendant distinguishes the plaintiff's complaint from Thornley's, stating that the plaintiff in this case has brought a federal FDCPA claim and alleged that "he was confused, misled, and spent time and money investigating one of the communications, and that he is entitled to an award of actual damages." Id. (citing dkt. no. 1-1 at p. 10, ¶¶37-39). It argues that "[w]hile an allegation of actual damages may not be *necessary* to confer standing . . ., this allegation, coupled with Plaintiff's intent to proceed with a claim of actual damages, might be *sufficient* to allege an injury in fact." Id. (emphasis in original) (citing TransUnion v. Ramirez, ___ U.S. ___,141 S. Ct. 2190 (2021)).

The defendant next argues that remand would be improper as to the class claims. Id. at 6. The defendant argues that the plaintiff's complaint does not limit the class definition to those who did not suffer a particularized injury

6

as the plaintiff had in <u>Thornley</u>, and that the proposed class "could easily" include individuals who suffered a concrete injury. <u>Id.</u> at 6-8. It further compares the plaintiff's class claims to those in <u>Standard Fire Insurance Co. v. Knowles</u>, 568 U.S. 588 (2013).

The plaintiff replies that the defendant misunderstands <u>Thornley</u> and that his motion is further supported by <u>Collier v. SP Plus Corp.</u>, 889 F.3d 894, 896 (7th Cir. 2018). Dkt. No. 8 at 2. As to <u>Thornley</u>, the plaintiff asserts that there is no difference in the standing requirement between cases over which the court has federal question jurisdiction and cases over which the court has diversity jurisdiction. <u>Id.</u> Regarding <u>Collier</u>, the plaintiff argues that federal question jurisdiction is insufficient to maintain a case in federal court if the party bringing the suit lacks standing. <u>Id.</u>

The plaintiff next argues that "whether a plaintiff has actually suffered an injury-in-fact is effectively irrelevant if the injury is not 'presented in their complaint.'" <u>Id.</u> at 2-3 (citing <u>Thornley</u>, 984 F.3d at 1248). He cites <u>Collier</u> for the premise that a reference in the complaint's prayer for relief to "actual damages" is insufficient to establish Article III standing.  <u>Id.</u> at 3 (citing <u>Collier</u>, 889 F.3d at 896). The plaintiff asserts that the Seventh Circuit requires that the plaintiff allege particular injuries in the complaint. <u>Id.</u> (citing <u>Gunn</u>, 982 F.3d at 1072).

The plaintiff next addresses the defendant's arguments regarding the class. The plaintiff says that he cannot bring on behalf of a class a claim for which he does not have standing. <u>Id.</u> at 4. He argues that the Seventh Circuit's

7

decision in <u>Brunett v. Convergent Outsourcing, Inc.</u>, 982 F.3d 1067, 1069 (7th Cir. 2020), addressed this issue and found that "'someone who is not injured cannot represent those who are.'" <u>Id.</u>

B.    <u>Analysis</u>

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c)). In this district, when a court considers a motion to remand, "all doubt is resolved in favor of remand." <u>Paldrmic v. Altria Corp. Servs., Inc.</u>, 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004) (citing <u>Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.</u>, 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999)).

Article III standing is an "essential component of Article III's case-or-controversy requirement," and therefore a "threshold jurisdictional question." <u>Apex Digital, Inc. v. Sears, Roebuck & Co.</u>, 572 F.3d 440, 443 (7th Cir. 2009) (citing <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." <u>Id.</u> "Standing is an element of subject-matter jurisdiction in a federal civil action . . . ." <u>Moore v. Wells Fargo Bank, N.A.</u>, 908 F.3d 1050, 1057 (7th Cir. 2018).

The "irreducible constitutional minimum of standing contains three requirements. *Lujan v. Defenders of Wildlife*, [504 U.S. 555], at 560

8

[(1992)] . . . First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, [495 U.S. 149], at 149, 155 [1990] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 . . . (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 . . . (1976). And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45-46 . . .; see also *Warth v. Seldin*, 422 U.S. 490, 505 . . . (1975). This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. See *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 . . . (1990).

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04 (1998). Regarding the "injury in fact" leg of the triad, the injury must be "concrete—it must be "real," not "abstract." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (citations omitted). The injury also must be "particularized," such that it "affect[s] the plaintiff in a personal and individual way." Id. at 339.

"Federal courts 'have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Bazile v. Finance System of Green Bay, Inc., 983 F.3d 274, 281 (7th Cir. 2020) (quoting Henderson *ex rel.* Henderson v. Shineski, 562 U.S. 428, 434 (2011)). Because it invoked federal jurisdiction by removing the case, the defendant bears the burden of establishing that the elements of jurisdiction— including Article III standing—existed at the time of removal. Collier, 889 F.3d at 896. See also, Tri-State Water Treatment, Inc. v. Bauer, 845 F.3d 350, 352

9

(7th Cir. 2017) ("As the party seeking removal, Home Depot bears the burden of establishing federal jurisdiction."). "Removal is proper only when a case could originally have been filed in federal court." <u>Collier</u>, 889 F.3d at 896 (citing 28 U.S.C. §1441(a). So the removing party—here, the defendant—must prove that the plaintiff "suffered an injury beyond a statutory violation." <u>Id.</u> The defendant cannot do so.

In 2019, the Seventh Circuit stated unequivocally that an FDCPA violation that does not cause harm does not satisfy the injury-in-fact requirement sufficient to confer standing—as the court put it, "no harm, no foul." <u>Casillas v. Madison Ave. Assocs., Inc.</u>, 926 F.3d 329, 331-32 (7th Cir. 2019) (citing <u>Spokeo</u>, 578 U.S. at 342). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." <u>Id.</u> at 332. "[A] plaintiff cannot satisfy the injury-in-fact element of standing simply by alleging that the defendant violated a disclosure provision of a consumer-protection statute." <u>Id.</u> (discussing <u>Groshek v. Time Warner Cable, Inc.</u>, 865 F.3d 884, 887 (7th Cir. 2017)).

The Seventh Circuit has noted that in a "slew of cases," it has foreclosed the argument that the fact that the FDCPA entitles consumers to certain information and the consumer doesn't get that information can constitute an injury-in-fact. <u>Markakos</u>, 997 F.3d at 780 (listing cases, including <u>Casillas</u>). It has explained that "to fulfill the injury in fact requirement, the violation must have 'harmed or presented an "appreciable risk of harm" to the underlying

10

concrete interest that Congress sought to protect.'" Id. (quoting Casillas, 926 F.3d at 333, and Spokeo, 578 U.S. at 342 ("[N]ot all inaccuracies [in a credit report governed by the Fair Credit Reporting Act] cause harm or present any material risk of harm.")).

In Markakos, the Seventh Circuit provided examples of concrete harms that an FDCPA could cause. Markakos, 997 F.3d at 780. It explained that "an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." Id. (citing Larkin v. Fin. Sys. of Green Bay, Inc., 982 F.3d 1060, 1066 (7th Cir. 2020)). The court distinguished this type of injury from the injury Markakos alleged that she had experienced, observing that Markakos had "not alleged any way in which the alleged misinformation in Medicredit's letters injured her." Id. at 781. Rather, she had "shown the opposite by admitting that she did not pay anything extra and that she properly 'disputed the debt as not warranted by the services provided.'" Id. The court found that the only other injury Markakos had alleged was that she was "confused and aggravated by Medicredit's letter," and noted that it had held that such a grievance was not an injury in fact in that context. Id. (citing Gunn, 982 F.3d at 1071).

The plaintiff has alleged two potential "injuries": (1) being confused and misled by the defendant's letter and (2) spending time and money investigating the letter and its possible consequences. The defendant, which has the burden of establishing the plaintiff's standing as of the time of removal, has failed to demonstrate that either of these potential injuries is sufficient.

11

The defendant begins by asserting that the plaintiff could have carefully crafted his complaint to avoid even the hint of a concrete injury, recommending the "carefully crafted complaint in *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021)." Dkt. No. 7 at 4. Thornley involved alleged violations of the Illinois Biometric Information Privacy Act. Thornley, 984 F.3d at 1242. The complaint conceded that none of the named plaintiffs and none of the class members had suffered any injury other than violation of the statute. Id. at 1246. The Seventh Circuit concluded that the plaintiffs had "described only a general, regulatory violation, not something that is particularized to them and concrete." Id. at 1248. The court observed that the plaintiffs had taken "care in their allegations . . . to steer clear of federal court," but noted that this wasn't prohibited. Id.

The defendant asserts that if the plaintiff had wanted to avoid ending up in federal court, he could have done what the Thornley plaintiffs did—stated flat-out in the complaint that he suffered no injury from the alleged violations of the FDCPA. Dkt. No. 7 at 5. But the FDCPA is a different statute from the Illinois statute at issue in Thornley. The Illinois statute "addresse[d] only the regulated entity—the collector or holder of the biometric data—and flatly prohibit[ed] for-profit transactions." Thornley, 984 F.3d at 1247. The plaintiff did not need to allege a particularized injury to allege that the defendant had violated the statute's prohibition against selling, leasing, trading or otherwise profiting from selling a person or customer's biometric data. Id. at 1246. The plaintiff here has alleged a violation of 15 U.S.C. §1692e(10), which prohibits a

debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." A plaintiff who claims that a defendant violated §1692e(10) but asserts that she was not confused or misled arguably has not alleged that the defendant's representations were "false" or "deceptive." Unlike a plaintiff alleging violation of the Illinois biometric statute, a plaintiff alleging a violation of one of the provisions of §1692e must allege that he was deceived or misled. That does not mean, however, that the deception or the misleading caused the type of concrete injury-in-fact described in the Seventh Circuit caselaw since Casillas.

Next, the defendant focuses on the fact that the plaintiff has asked for actual damages. "A mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." Collier, 889 F.3d at 896. The defendant cites TransUnion 141 S. Ct. 2190 for the proposition that an allegation of actual damages, coupled with the plaintiff's "intent to proceed on a claim of actual damages, might be *sufficient* to allege an injury in fact." Dkt. No. 7 at 5. Ramirez involved a class of 8,185 individuals who sued the TransUnion credit reporting agency under the Fair Credit Reporting Act, alleging that TransUnion did not use reasonable procedures to ensure the accuracy of their credit files. Id. at 2200. Of those 8,185 individuals, TransUnion had provided misleading credit reports to third-party businesses for 1,853. Id. The Supreme Court concluded that "those 1,853 class members ha[d] demonstrated concrete reputational harm and thus ha[d] Article III

13

standing," while the other 6,332 class members whose credit files had not been provided to third-party businesses did not have standing. Id. The Court explained that "reputational harms" were a type of injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." Id. at 2204. The Court explained that for the 1,853 class members, "TransUnion provided third parties with credit records containing . . . alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals," and that they thus suffered a harm "with a 'close relationship' to the harm associated with the tort of defamation." Id. at 2209. But the Court concluded that the other plaintiffs, for whom TransUnion had not disseminated the alerts to third parties, could not "demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm." Id. at 2210.

Ramirez does not support the defendant's argument that if a plaintiff asserts a claim of damages and expresses an intention to proceed on that claim, that is sufficient to constitute an injury-in-fact that confers Article III standing. While the plaintiff may have asserted a claim for damages based on the defendant's alleged violation of the statute, he has not alleged that his reputation was injured, or that he suffered any harm that bears a close relationship to any particular tort or other harm that traditionally forms a basis for lawsuits in American courts.

The defendant also cites Attias v. Carefirst, Inc., 865 F.3d 620, 626 (D.C. Cir. 2017) for the notion that "[a]t the pleading stage, general factual

14

allegations of injury resulting from the defendant's conduct may suffice." Dkt. No. 5 at 8. This is only a portion of a quote, taken out of context; the Attias court was noting that the district court had dismissed the case for lack of standing at the pleading stage, "where plaintiffs are required only to 'state a *plausible* claim' that each of the standing elements is present." Id. at 625. In support of that proposition, the court cited from Lujan, 504 U.S. at 561: "[E]ach element [of standing] must be supported … with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice…." Id. at 625-626 (citing Lujan). The Attias court was observing nothing more than the fact that a plaintiff is not required to present *evidence* of standing at the pleading stage; at that stage, the plaintiff may rely on *allegations* of the elements of standing. That has nothing to with whether the mere assertion of a claim for damages is sufficient to allege an injury-in-fact for the purposes of alleging standing. It does not.

The defendant asserts that under Warth v. Seldin, 422 U.S. 490, 500 (1975), "[S]tanding in no way depends on the merits of the plaintiff's claim." Dkt. No. 7 at 6. That is not the precise quote; the Court stated, "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, . . . it often turns on the nature and source of the claim asserted." Warth, 422 U.S. at 500 (citations omitted). The fact that determining standing does not necessarily require the court to determine whether the defendant did what the plaintiff says it did has nothing to do with

15

whether a plaintiff who asserts nothing more than that he is entitled to damages, without describing a concrete injury, has Article III standing. He does not.

The defendant emphasizes that the plaintiff alleged that he was "confused, misled, and spent time and money investigating one of the communications." Dkt. No. 7 at 2. But the defendant has cited no authority holding that these "harms" constitute concrete injuries in fact sufficient to confer standing. The defendant's assertion that being "misled and confused" constitutes a concrete injury is foreclosed by cases like Gunn (holding that a plaintiff must show "a concrete and particularized loss, not infuriation or disgust," 982 F.3d at 1071), Markakos (confusion and aggravation do not constitute injuries in fact, 997 F.3d at 781) and Brunett

> A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. But the state of confusion itself is not an injury. See, e.g., *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020). If it were, then everyone would have standing to litigate about everything.

Brunett, 982 F.3d at 1068.

As for the plaintiff's allegation that he spent time and money investigating one of the communications he received, the defendant cites no authority supporting the claim that this constitutes a concrete injury in fact. In Brunett, the Seventh Circuit held that the fact that the plaintiff's confusion "led her to hire a lawyer does not change the evaluation." Brunett, 982 F.3d at 1069. The court explained:

16

Even innocuous statements about tax law may lead people to consult counsel. The proposition that forgiving debt is a form of income is not intuitive to non-lawyers (or even to some lawyers). A desire to obtain legal advice is not a reason for universal standing. The plaintiffs in *Thole* [*v. U.S. Bank, N.A.*, ___ U.S. ___, 140 S. Ct. 1615 (2020)], *Spokeo, Hein* [*v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587 (2007)], and [*United States v.*] *Richardson* [418 U.S. 166 (1974)] all had counsel. They had been concerned, confused, disturbed, or upset enough to ask lawyers for help. But the Supreme Court held that only people who can show personal, concrete injuries may litigate. Many people think that an advisory opinion will set their minds at ease, but hiring a lawyer in quest of a judicial answer does not permit a federal court, operating under Article III, to give that answer.

Id. The Seventh Circuit came to a similar conclusion in Gunn, finding that the costs of litigation are insufficient to confer standing. 982 F.3d at 1071-72.

If hiring an attorney or spending money to litigate do not constitute concrete injuries-in-fact sufficient to confer Article III standing, "spend[ing] time and money investigating [a communication] and the possible consequences of responding to [that communication]" do not suffice. Dkt. No. 1-1 at p. 10, ¶39. The Northern District of Illinois rejected a similar argument earlier this year. In Milisavljevic v. Midland Credit Mgmt., LLC, the court considered whether the "time, money and energy [the plaintiff] ha[d] spent hiring a lawyer and working to vacate [a related] state-court judgment" were injuries sufficient to confer standing in a FDCPA claim. Case No. 19-cv-08449, 2022 WL 204371, *6 (N.D. Ill. Jan. 24, 2022). That court relied on the Seventh Circuit's analysis in Brunett to determine that such injuries were insufficiently concrete. Id.

As to the class, the defendant may be correct that there may be putative class members who have suffered concrete injuries, but such hypothetical

injuries are insufficient to keep the case in federal court. The defendant's arguments based on Thornley are misguided. That case addressed whether a *potential* injury was sufficient to confer standing in a class action, found that it was not and affirmed the district court's decision to remand the case to the state court. Thornley, 984 F.3d at 1247-49. The Seventh Circuit's decision in Brunett is more on all fours with the facts in this case. In Brunett, the court succinctly stated that "someone who is not injured cannot represent those who are." Brunett, 982 F.3d at 1069. The court determined that because the plaintiff was uninjured, she could not certify a class of injured plaintiffs. Id. The same reasoning applies here—the natural consequence of keeping this case in federal court would be that a plaintiff who lacked a concrete injury of his own would be seeking to act as the representative of a class plaintiffs who may have suffered a concrete injury. It is unlikely that a federal court would find an uninjured plaintiff adequate under Rule 23 to represent injured class members.

Because the defendant has failed to satisfy its burden of demonstrating that the plaintiff has Article III standing to proceed in federal court, the court will grant the plaintiff's motion and remand the case to Milwaukee County Circuit Court.

## III.  Fees and Costs

That means the court must consider the plaintiff's request for fees and expenses. Under 28 U.S.C. §1447(c), the court has the discretion to award attorneys' fees and expenses incurred due to the defendant's attempt to remove

18

the case to federal court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). "The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141. "[I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then the district court should award a plaintiff his attorneys' fees." Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007).

The plaintiff asserts that the defendant's choice to remove the case was objectively unreasonable given Seventh Circuit case law on Article III standing. Dkt. No. 6 at 5. He argues that in its answer, the defendant affirmatively asserted that the plaintiff had not suffered an injury in fact and did not have standing. Id. The plaintiff points out that the defendant removed this case to federal court *after* the Seventh Circuit had issued numerous decisions indicating that claims like the plaintiff's did not state concrete injuries in fact sufficient to confer Article III standing. Id. at 8.

The court will grant the plaintiff's request to award fees and costs. The defendant's arguments that the plaintiff suffered a concrete injury are curious given the third affirmative defense asserted in the answer: "PRA asserts that

19

Plaintiff has not incurred an injury in fact, and Plaintiff does not therefore have standing under Article III of the United States Constitution to bring the instant claims." Dkt. No. 3 at p. 32, ¶3. The defendant's assertion that the plaintiff could have crafted his complaint to avoid federal court is not persuasive or relevant. The defendant's argument that an allegation of damages coupled with an intent to pursue those damages constitutes concrete injury is unsupported. The defendant's failure to address *any* of the Seventh Circuit's decisions finding no concrete injury in similar cases—Casillas, Larkin, Brunett, Markakos and many others—is troubling.

It was objectively unreasonable for the defendant to remove the case to federal court, because established case law was clear at the time of removal that the plaintiff had not alleged a concrete injury sufficient to confer Article III standing. The court will order the defendant to pay attorneys' fees and costs under 28 U.S.C. §1447(c).

## IV.   Conclusion

The court **GRANTS** the plaintiff's motion to remand to Milwaukee County Circuit Court. Dkt. No. 4.

The court **ORDERS** that the case is **REMANDED** to Milwaukee County Circuit Court.

The court **GRANTS** the plaintiff's request for costs and fees incurred as a result of the removal. Dkt. No. 4.

The court **ORDERS** that by the end of the day on **August 26, 2022**, the plaintiff must file an accounting of costs and fees. The court

20

**ORDERS** that if the defendant wishes to object to that accounting, it must file its objection by the end of the day on **September 2, 2022**.

Dated in Milwaukee, Wisconsin this 12th day of August, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**